4 F.3d 985
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Catherine A. KELLY, Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, Defendant-Appellee.
 No. 92-2420.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 12, 1993.
Decided: August 23, 1993.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Fayetteville. W. Earl Britt, District Judge. (CA-91-1-3-CIV-BR)
 Argued: Christopher Martin Mislow, Scottsdale, Arizona, for Appellant.
 Eileen G. Coffey, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 On Brief: Wade E. Byrd, Berry & Byrd, Fayetteville, North Carolina, for Appellant.
 James R. Dedrick, United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 On January 4, 1991, appellant Catherine A. Kelly filed suit against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. Sec. 1346 et seq., in the United States District Court for the Eastern District of North Carolina. Kelly claimed that doctors at Keller Army Hospital at West Point, New York, had negligently performed a caesarean section and an unconsented tubal ligation on January 7, 1985, during delivery of her third child.
 
 
 2
 The United States moved to dismiss appellant's complaint, or in the alternative, for summary judgment, on the grounds that the district court lacked subject-matter jurisdiction because appellant had not filed her claim with the appropriate federal agency within the time prescribed by the FTCA. The district judge granted the United States' motion as to the claims relating to the caesarean section, but denied it in regard to the tubal ligation claims. After a bench trial, the district judge found that consent had been given for the tubal ligation and denied appellant all relief.
 
 
 3
 Three issues are presented on appeal: (1) whether the district court lacked subject-matter jurisdiction because appellant's claim was untimely filed; (2) whether the district court lacked subject-matter jurisdiction because the United States has not waived its immunity for assault-and-battery actions; and (3) whether the district court committed clear error in finding that the plaintiff had consented to the tubal ligation. Because we hold that appellant's claim was untimely filed, we have no occasion to reach the issues of consent and sovereign immunity for assault-and-battery actions.
 
 I.
 
 4
 The FTCA provides for a limited waiver of the sovereign immunity of the United States for the torts of government employees committed within the scope of their employment. A condition of that waiver, however, is compliance with the Act's statute of limitations, which states that
 
 
 5
 A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.
 
 
 6
 28 U.S.C. Sec. 2401(b). The two-year limitations period is jurisdictional and therefore may be raised by the parties at any stage of the litigation, or by the court on its own motion; it is not subject to waiver. Barren by Barren v. United States, 839 F.2d 987, 992 (3rd Cir.), cert. denied, 488 U.S. 827 (1988). The parties agree that appellant filed her administrative claim on June 8, 1987. Therefore, if her cause of action accrued before June 8, 1985, her suit is time-barred.
 
 
 7
 In United States v. Kubrick, 444 U.S. 111 (1979), the Supreme Court rejected the proposition that a FTCA claim for medical malpractice accrues when the plaintiff "knows that the acts inflicting the injury may constitute medical malpractice." Id. at 113. The Court held, instead, that the limitations period begins when "the plaintiff knows both the existence and the cause of his injury." Id. The Court imposed a requirement of prompt investigation on FTCA plaintiffs, stating that "[a] plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the government." Id. at 123 (emphasis added).
 
 
 8
 It is clear from the record in this case that appellant knew of both the existence and the cause of her injury-the tubal ligation-well before June 1985. After appellant awoke from anaesthesia on January 7, 1985, her doctor told her about the ligation and that he had performed it. J.A. at 272. Upon being discharged from the hospital, appellant signed a form indicating that the ligation had occurred. Id. at 257. Appellant's doctor discussed the operation with her at her post-partum checkup, id. at 108, and about a month after appellant's discharge, she discussed the ligation with her husband. Id. at 160-61. Under Kubrick, therefore, appellant's claim is time-barred.
 
 
 9
 In denying the government's motion for summary judgment, the district court stated that the statute of limitations did not start to run until April 1987, when appellant supposedly learned for the first time that the ligation was performed before her doctor obtained her husband's consent. Id. at 143. However, this statement conflicts with the district court's finding of fact that appellant's doctor performed the ligation only after receiving the purported consent of her husband. Id. at 271. Perhaps because of the district court's latter finding, appellant does not argue before us that the ligation took place before her husband's asserted consent. Rather, appellant contends that she was misled by her doctors, who allegedly waited over two years after performing the ligation to tell her that the procedure was medically unnecessary. Appellant's Reply Br. at 3. Appellant argues that the original misinformation she received as to the medical necessity of the ligation "lulled" her into "a sense of false belief which precluded a discovery of both the injury and its true cause until less than two years before filing her administrative claim." Id. at 7.*
 
 
 10
 This argument, which was not raised below, is unavailing. Assuming that appellant was misled, her "false belief" was not, for example, that the ligation had not occurred or that her doctors had not performed it, but rather that the operation was necessary. As noted, however, Kubrick rejected the contention that such a belief about one's injury, the underlying legitimacy of which can be reasonably ascertained, postpones the limitations period. An FTCA plaintiff is not "free to sue at any time within two years from the time he receives or perhaps forms for himself a reasonable opinion that he has been wronged." Kubrick, 444 U.S. at 118.
 
 
 11
 Appellant's claim is not saved from the statutory bar by our decision in Otto v. National Institute of Health, 815 F.2d 985 (4th Cir. 1987). The continuous treatment doctrine relied upon by the court in that case of course is inapplicable in this case, because appellant underwent no further treatment following the disputed ligation. Moreover, here, unlike in Otto, appellant knew or reasonably should have known of her injury and its cause at the time her operation was performed, or shortly thereafter, through conduct of the inquiries that Kubrick demands that a prospective tort plaintiff undertake.
 
 CONCLUSION
 
 12
 Because appellant failed to bring her claim within the two-year FTCA statute of limitations, the district court lacked jurisdiction over appellant's claim. Accordingly, the district court's order dismissing appellant's case is affirmed.
 
 AFFIRMED
 
 
 *
 At oral argument, appellant expressly disavowed any claim of fraud, which might have tolled the statute on equitable grounds